UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BRIAN KEITH BATDORF,            :
                                 :CIVIL ACTION NO. 3:16-CV-409
          Plaintiff,            :
                                 :(JUDGE CONABOY)
          v.                    :
                                 :
CAROLYN W. COLVIN,              :
Acting Commissioner of          :
Social Security,                :
                                 :
          Defendant.            :
                                 :

---

**MEMORANDUM**

Pending before the Court is Plaintiff's appeal from the Commissioner's denial of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.  (Doc. 1.)  He alleged disability beginning on October 15, 2010.  (R. 14.)  The Administrative Law Judge ("ALJ") who evaluated the claim, Daniel Myers, concluded in his May 14, 2014, decision that Plaintiff would remain insured through December 31, 2014, and his severe impairments of degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine with radiculopathy, post laminectomy syndrome, depression, and anxiety did not alone or in combination meet or equal the listings.  (R. 14, 16-17.)  He also found that Plaintiff had the residual functional capacity ("RFC") to perform light work with certain nonexertional limitations and that, although he was unable to do past relevant work, he was capable of performing jobs that existed in significant numbers in the national economy.  (R. 18-25.)  ALJ Myers therefore

found Plaintiff was not disabled.  (R. 26.)

With this action, Plaintiff asserts that the Acting Commissioner's decision should be remanded for the following reasons: 1) the ALJ erred in affording more weight to the non-examining state agency physician than to the consultative examiner and state agency medical consultant specializing in neurology (Doc. 7 at 8); and 2) the ALJ did not properly account for Plaintiff's limitations in concentration, persistence, and pace (*id.* at 19). After careful review of the record and the parties' filings, I conclude this appeal is properly granted.

## I. Background

### A.  *Procedural Background*

Plaintiff protectively filed for DIB on August 8, 2012.  (R. 14.)  The claims were initially denied on November 21, 2012, and Plaintiff filed a request for a hearing before an ALJ on December 13, 2012.  (*Id.*)

ALJ Myers held a hearing on April 15, 2014.  (*Id.*)  Plaintiff, who was represented by an attorney, testified as did Vocational Expert ("VE") Michael J. Kibler.  (*Id.*)  As noted above, the ALJ issued his unfavorable decision on May 14, 2014, finding that Plaintiff was not disabled under the Social Security Act during the relevant time period.  (R. 26.)

Plaintiff's request for review of the ALJ's decision was dated December 3, 2014.  (R. 1.)  The Appeals Council denied Plaintiff's

request for review of the ALJ's decision on January 27, 2016.  (R. 1-5.)  In doing so, the ALJ's decision became the decision of the Acting Commissioner.  (R. 1.)

On March 8, 2016, Plaintiff filed his action in this Court appealing the Acting Commissioner's decision.  (Doc. 1.)  Defendant filed her answer and the Social Security Administration transcript on May 16, 2016.  (Docs. 5, 6.)  Plaintiff filed his supporting brief on June 9, 2016.  (Doc. 7.)  Defendant filed her brief on July 14, 2016.  (Doc. 8.)  Plaintiff filed his reply brief on July 27, 2016.  (Doc. 14.)  Therefore, this matter is fully briefed and ripe for disposition.

**B.    *Factual Background***

Plaintiff was born on March 24, 1973, and was thirty-seven years old on the alleged disability onset date.  (R. 25.)  He has a limited education, and he has past relevant work as a construction worker, stone mason, and tile setter.  (*Id.*)

**1.    Physical Impairment Evidence**

Plaintiff suffered a work injury on September 25, 2008.  (R. 240.)  Due to the neck injury he sustained in the accident, Amir H. Fayyazi, M.D., performed a C6-C7 fusion on October 10, 2008.  (*Id.*)  On May 5, 2009, Dr. Fayazzi noted that Plaintiff had been working with a twenty-five pound weight restriction, he continued to have some neck pain but was doing well, he was able to continue with light duty, and he was expected to be able to return to full duty

within three to five months.  (R. 244.)  Dr. Fayyazi noted that
Plaintiff had continuing neck pain and he planned to start him on a
"work hardening program."  (R. 245.)  Dr. Fayyazi added that he
would obtain a Residual Functional Capacity evaluation if Plaintiff
could not go back to full duty when he saw him in two months.[1]
(*Id.*)  Dr. Fayyazi released Plaintiff from his care on November 7,
2009, with a twenty-five pound weight restriction which he
considered most likely permanent.  (R. 247.)  He also noted that no
further treatment would be necessary.  (*Id.*)

Plaintiff returned to Dr. Fayyazi on September 29, 2010--two
years after the cervical fusion surgery.  (R. 248.)  Dr. Fayyazi
noted that Plaintiff's symptoms were unchanged, he was not working,
and he was continuing with his Worker's Compensation claim.  (*Id.*)
Physical examination findings were normal except for a limited
cervical range of motion and discomfort on palpation of the
cervical spine.  (*Id.*)  X-rays showed only miminal evidence of
degenerative changes at adjacent levels.  (*Id.*)  Dr. Fayyazi
concluded that Plaintiff had most likely reached a plateau and he
would see him in another year to make sure Plaintiff did not have
progression of degeneration at the adjacent level.  (*Id.*)  He also

---

[1]  Plaintiff notes the ALJ correctly gave this opinion limited
weight because it was authored prior to Plaintiff's alleged onset
date.  (Doc. 7 at 4-5 (citing R. 24).)  Because this October 2009
opinion evidence is not relevant to Plaintiff's asserted errors or
the ALJ's determination, further review of the findings is not
necessary.

noted that Plaintiff could increase his activity as tolerated.
(*Id.*)

In June 2011, Dr. Fayyazi recorded that Plaintiff continued to
have some leg pain and that he was "settling his case and was
concerned about future treatments." (R. 249.) Dr. Fayyazi found
no evidence of progression of degenerative changes. (*Id.*) In his
Plan, he noted that Plaintiff was doing quite well, would be seen
on an as-needed basis, and should not be concerned about his
cervical spine as Dr. Fayyazi had found very minimal changes at the
adjacent level. (*Id.*)

On November 12, 2012, Plaintiff was seen at Fredericksburg
Community Health Center by Robert England, a certified physician's
assistant, with complaints of right leg pain which had lasted for
two weeks. (R. 320.) The pain was at the posterior aspect of the
leg with associated tingling into the foot. (*Id.*) Mr. England
recorded that Plaintiff walked with a mild limp, and he found that
Plaintiff had tenderness at the sciatic notch of the right upper
leg. (*Id.*) Plaintiff was directed to take Naproxen, encouraged to
ice after activities, use moist heat at other times, and do
stretching exercises. (*Id.*)

In December 2012 Plaintiff reported to Mr. England that he had
been doing well but the pain in his leg returned when the
medication ran out. (R. 322.) On examination, Mr. England found
tenderness down the posterior aspect of the right leg from the

5

waist to the foot.  (*Id.*)  He prescribed Naproxen and
Cyclobenzaprine, ice, moist heat and stretching exercises, and
noted that he would schedule Plaintiff for physical therapy.  (*Id.*)

On March 7, 2013, Plaintiff presented to Fredericksburg
Community Health only for disability paperwork completion.  (R.
324.)  Mr. England recommended that Plaintiff see a disability
doctor to get a formal evaluation.  (*Id.*)

On Mr. England's referral, Plaintiff had a lumbar spine MRI on
July 1, 2013, due to "right lower extremity radiculopathy type
symptoms."  (R. 326.)  The following Impression was recorded:
multilevel degenerative disc disease/osteoarthritis; no significant
lumbar central stenosis; findings most pronounced at L5-S1 where a
disc protrusion abuts the right S1 nerve root; less pronounced
findings at the remainder of the lumbar levels; and foraminal
narrowing as described.  (R. 327.)

On August 13, 2013, Plaintiff was seen at Lebanon Orthopaedic
Associates by David Overholt, M.D., on referral from Fredericksburg
Community Health for back and right leg pain.  (R. 328.)  Dr.
Overholt noted that Plaintiff's pain started about two months
earlier and radiated to the posterior aspect of his right knee.
(*Id.*)  He recorded that Plaintiff took ibuprofen intermittently for
the pain but most days he did not take any, and Plaintiff was able
to keep up with his relatively low level of activity.  (*Id.*)  On
examination, Dr. Overholt found that Plaintiff ambulated without a

6

limp or antalgic gait, his neck showed some stiffness as a result of the cervical fusion, he had no sensory deficit in the right or left leg, and straight leg raising on the right side caused some irritation at 45 degrees of extension with mildly positive tension signs.  (*Id.*)  Dr. Overholt noted that the July MRI scan was consistent with degenerative disc disease in the lumbar spine with a small disc herniation at the L5-S1 level impinging on the right neuroforamen.  (*Id.*)  He also noted that Plaintiff's history and physical findings with the straight leg raising were consistent with a lumbar radiculopathy on the right side secondary to the small disc herniation.  (R. 329.)  Dr. Overholt commented that Plaintiff was basically receiving no treatment; he recommended ibuprofen 600 mg. twice a day every day, an exercise program for the back, and consideration of epidural steroid injections if Plaintiff did not see significant improvement.  (*Id.*)

2.    **Mental Impairment Evidence**

    On February 7, 2011, Plaintiff presented to Fredericksburg Community Health Center for evaluation of anxiety and depression, reporting that he "tends to have ups and downs." (R. 237.)  Notes indicate he had been seen for similar complaints a year or two earlier, and Plaintiff had stopped the medications previously prescribed when they ran out although he reported that he thought they had helped.  (*Id.*)  Notes also state that Plaintiff was not working because of his back and neck, but he hoped to do insurance

7

adjustments for cars although he "ha[d] been dragging his feet on starting the program." (*Id.*)  Plaintiff reported he had not been to counseling for a while because he did not think it helped. (*Id.*)  Plaintiff was prescribed Ativan for short term use and Celexa for longer term treatment.  (*Id.*)  He was also encouraged to follow up regarding the insurance adjuster position as it "may give him some new purpose and feel better."  (*Id.*)

3.    **Consultative Examinations and Opinion Evidence**

On April 27, 2011, Lance Owen Yarus, D.O., completed an impairment rating evaluation.  (R. 240-43.)  He noted Plaintiff's chief complaint of occasional and intermittent neck pain (rated at 3/10) resulting from the 2008 workplace injury as well as Plaintiff's report that his symptoms worsened with activities and lifting.  (R. 240.)  On examination, Dr. Yarus found Plaintiff's neck range of motion was limited in forward flexion, extension, rotation, and lateral side bending right and left.  (R. 242.)  He also found Plaintiff's gait to be non-antalgic and lower extremity examination was normal.  (*Id.*)  Plaintiff was taking no medication at the time of the evaluation and was receiving no other treatment. (R. 240.)  Dr. Yarus opined that Plaintiff had reached maximum medical improvement, he had limitations in activities of daily living, and his prognosis was fair.  (R. 242.)

On October 20, 2012, Anjuli Desai, M.D., performed a consultative examination.  (R. 255-65.)  He noted that Plaintiff

8

presented for a disability evaluation secondary to cervical neck pain as well as anxiety and depression. (R. 255.) On examination, Dr. Desai found that Plaintiff walked with a slow antalgic gait, had some difficulty heel and toe walking, neck extension was significantly limited, he had 4+/5 strength in both upper and lower extremities, deep tendon reflexes were 2+ in both upper and lower extremities, straight leg raise was negative, and there was no atrophy or joint swelling. (R. 257-58.) Mental status examination revealed that Plaintiff was alert and oriented though his speech was slow and his affect slightly constricted. (R. 258.) Dr. Desai noted that Plaintiff needed additional time for thought and information processing and had some slowed response time. (*Id.*) In his narrative functional assessment, Dr. Desai opined that

> [t]he number of hours the claimant can stand and walk in an eight hour day, based on today's examination, is expected to be two to three hours with frequent rest breaks. The number of hours the claimant can sit in an eight hour day, based on today's examination, is expected to be one to two hours with frequent weight shifting.

(R. 259.) He also offered the following opinions: Plaintiff could carry ten pounds frequently and twenty pounds occasionally; he should never bend, kneel, stoop, crouch, balance, or climb; he would have difficulty with reaching, handling, fingering objects; and he should avoid heights, moving machinery, and vibrations. (*Id.*)

On November 7, 2012, Robert J. Balogh, Jr., M.D., a state

9

agency consultant, completed a residual functional capacity
assessment based on evidence submitted, including Dr. Desai's
evaluation.  (R. 66-68.)  He agreed with Dr. Desai's lifting
restrictions but concluded Plaintiff could stand/walk for about six
hours in an eight-hour day and could sit for the same period of
time.  (R. 66.)  He also concluded that Plaintiff could climb,
balance, stoop, kneel, crouch, and crawl occasionally.  (R. 66-67.)
He found no manipulative limitations.  (R. 67.)  Dr. Balogh opined
that Dr. Desai's RFC assessment was an overstatement of limitations
and appeared to rely on limitations reported by Plaintiff.  (R.
68.)

On November 9, 2012, Anthony J. Fischetto, Ed.D., conducted a
psychological examination, noting Plaintiff's alleged conditions of
anxiety, depression, cervical fusion, and radiculoptathy.  (R. 267-
74.)  Dr. Fischetto first noted that Plaintiff appeared to be a
little slow in comprehending things.  (R. 267.)  At the time of the
evaluation, Plaintiff had been on Citalopram for about a year and a
half and reported it helped a little bit.  (R. 268.)  He was
receiving no therapy at the time.  (*Id.*)  Plaintiff also reported
that he could not work because of lifting problems and
depression/anxiety had never affected his work.  (R. 269.)  On
mental status examination, Dr. Fischetto found the following: slow
psychomotor activity; slow but easy to understand speech; slow
productivity of thought; slow concentration for serial sevens but

10

attained a 5/5 score; average memory and good immediate retention and recall; and limited judgment and insight but good reliability. (R. 270-71.)  Dr. Fischetto's diagnosis was Depressive Disorder, NOS, and he assessed a GAF score of 63.  (R. 271.)  He opined that Plaintiff could benefit from counseling and concluded overall that Plaintiff was "a little depressed at times, a little slow cognitively, concentration is slow."  (R. 272.)

On November 19, 2012, Edward Jonas, Ph.D., a state agency psychological consultant, reviewed available evidence and found Plaintiff had mild difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence, or pace.  (R. 65.)  Dr. Jonas reached the overall conclusion that

> [t]he claimant's basic memory processes are intact.  Claimant can make simple decisions. The claimant is able to maintain socially appropriate behavior.  Stress tolerance may be somewhat limited.  The limitations resulting from the impairment do not preclude the claimant from performing the basic mental demands of competitive work on a sustained basis.

(R. 70.)

On March 7, 2013, Hillel Raclaw, Ph.D., a state agency psychological consultant, completed a Psychiatric Review Technique in which he concluded that Plaintiff had no restrictions in activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration,

persistence, or pace, and he has not experienced repeated episodes of decompensation, each of extended duration.  (R. 275-86.)

On March 15, 2013, John Shane, M.D., a state agency medical consultant, completed an RFC assessment.  (R. 287-93.)  He concluded the following: Plaintiff could frequently lift ten pounds and occasionally lift twenty pounds; he could stand and/or walk for at least two hours in an eight-hour workday; he could sit for about six hours in an eight-hour workday; he was limited in his ability to push and/or pull with his upper extremity; and he was limited in his reaching, handling and fingering abilities.  (R. 288, 290.)  A notation in his assessment indicated that Plaintiff could walk/stand for two to three hours in an eight-hour day.  (R. 289.)

**4.** **Hearing Testimony**

Plaintiff testified that he returned to light duty work after his 2008 accident and he was eventually laid off at about the time he was settling his Worker's Compensation case.  (R. 34, 42.)  He said he was unable to do light duty work because he could only work a couple of hours and his mobility was affected by the pain related to his injury.  (R. 36.)  He also said he had to work at his own pace and sometimes deal with his anxiety which affected his functioning.  (*Id.*)  Plaintiff said he has a hard time going up and down stairs because "his leg hurts occasionally sometimes."  (R. 46.)

ALJ Myers asked VE Michael Kibler to assume a hypothetical

12

individual of Plaintiff's age, and with a limited education and the following limitations: he was capable of lifting and carrying twenty pounds occasionally and ten pounds frequently, standing and walking up to six hours, and sitting up to six hours; he must be allowed to alternate positions at will; he could only occasionally bend, stoop, kneel, crouch, crawl, and climb stairs; he had to avoid hazards such as unprotected heights and non-stationary machinery; he was limited to occupations involving only simple, work-related decisions and only occasional changes in the routine work setting. (R. 47.) The VE responded that this individual could perform jobs which existed in the national or regional economy such as small products assembler and electrical accessories assembler. (R. 48.) If the hypothetical individual were further limited to only occasional pushing and pulling with the upper and lower extremities, and only occasional reaching bilaterally in all directions, the VE testified he could not perform the exemplary positions but could perform the conveyor line baker worker position. (*Id.*) The VE also testified that Plaintiff could perform the sedentary level position of surveillance system monitor. (R. 49.) When asked to also assume that the hypothetical individual could only sit for two hours and stand and walk for three hours in an eight-hour workday, the VE answered that the person would not be able to do any of the jobs he had identified for the ALJ. (R. 55.) There was also an extended discussion of

the effect of cognitive limitations although it is unclear what, if any, conclusion was reached.  (R. 50-56.)

## 5.   __ALJ Decision__

As noted above, ALJ Myers issued his decision on May 14, 2014. (R. 14-26.)  He made the following Findings of Fact and Conclusions of Law:

> 1.   The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

> 2.   The claimant has not engaged in substantial gainful activity since October 15, 2010, the alleged onset date (20 CFR 404.1571 et seq.).

> 3.   The claimant has the following severe impairments: degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine with radiculopathy, post laminectomy syndrome, depression, anxiety (20 CFR 404.1520(c)).

> 4.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

> 5.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b).  He is capable of lifting and carrying twenty pounds occasionally and ten pounds frequently. He is capable of standing and walking up to six hours and sitting up to six hours but must be allowed to alternate positions at will.  He is limited to

14

only occasional bending, stooping,
kneeling, crouching and crawling.  He is
limited to only occasional stairs.  He
must avoid hazards such as unprotected
heights and non-stationary machinery
moving about on the job site floor such
as forklifts.  He is limited to only
occasional pushing and pulling with the
upper and lower extremities.  He is
limited to only occasional reaching
bilaterally in all directions.  He is
limited to occupations involving only
simple work-related decisions and only
occasional changes to the routine work
setting.

6.     The claimant is unable to perform any
       past relevant work (20 CFR 404.1565).

7.     The claimant was born on March 24, 1973
       and was 37 years old, which is defined
       as a younger individual age 18-49, on
       the alleged disability onset date (20
       CFR 404.1563).

8.     The claimant has a limited education and
       is able to communicate in English (20
       CFR 404.1564).

9.     Transferability of job skills is not
       material to the determination of
       disability because using the Medical-
       Vocational Rules as a framework supports
       a finding that the claimant is "not
       disabled," whether or not the claimant
       has transferable job skills (See SSR 82-
       41 and 20 CFR Part 404, Subpart P,
       Appendix 2).

10.    Considering the claimant's age,
       education, work experience, and residual
       functional capacity, there are jobs that
       exist in significant numbers in the
       national economy that the claimant can
       perform (20 CFR 404.1569 and
       404.1568(a)).

11.    The claimant has not been under a

15

> disability, as defined in the Social
> Security Act, from October 15, 2010,
> through the date of this decision (20
> CFR 404.1520(g)).

(R. 16-26.)

## II. Disability Determination Process

The Commissioner is required to use a five-step analysis to determine whether a claimant is disabled.[2] It is necessary for the Commissioner to ascertain: 1) whether the applicant is engaged in a substantial activity; 2) whether the applicant is severely impaired; 3) whether the impairment matches or is equal to the requirements of one of the listed impairments, whereby he qualifies for benefits without further inquiry; 4) whether the claimant can perform his past work; 5) whether the claimant's impairment

---

[2] "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). The Act further provides that an individual is disabled

> only if his physical or mental impairment or
> impairments are of such severity that he is not
> only unable to do his previous work but cannot,
> considering his age, education, and work
> experience, engage in any other kind of
> substantial gainful work which exists in the
> national economy, regardless of whether such
> work exists in the immediate area in which he
> lives, or whether a specific job vacancy exists
> for him, or whether he would be hired if he
> applied for work.

42 U.S.C. § 423(d)(2)(A).

together with his age, education, and past work experiences preclude him from doing any other sort of work.  20 C.F.R. §§ 404.1520(b)-(g), 416.920(b)-(g); *see Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 888-89 (1990).

If the impairments do not meet or equal a listed impairment, the ALJ makes a finding about the claimant's residual functional capacity based on all the relevant medical evidence and other evidence in the case record.  20 C.F.R. § 404.1520(e); 416.920(e). The residual functional capacity assessment is then used at the fourth and fifth steps of the evaluation process.  *Id.*

The disability determination involves shifting burdens of proof.  The initial burden rests with the claimant to demonstrate that he or she is unable to engage in his or her past relevant work.  If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform.  *Mason v. Shalala*, 993 F.2d 1058, 1064 (3d Cir. 1993).

As set out above, the instant decision was decided at step five of the sequential evaluation process when the ALJ found that Plaintiff could perform jobs that existed in significant numbers in the national economy.  (R. 25.)

### III. Standard of Review

This Court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence to

17

support the Commissioner's decision.  42 U.S.C. § 405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  Substantial evidence means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  The Third Circuit Court of Appeals further explained this standard in *Kent v. Schweiker*, 710 F.2d 110 (3d Cir. 1983).

> This oft-cited language is not . . . a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise.  A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence.  Nor is evidence substantial if it is overwhelmed by other evidence-- particularly certain types of evidence (e.g., that offered by treating physicians)--or if it really constitutes not evidence but mere conclusion.  *See* [*Cotter*, 642 F.2d] at 706 ("'Substantial evidence' can only be considered as supporting evidence in relationship to all the other evidence in the record.") (footnote omitted).  The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.

*Kent*, 710 F.2d at 114.

This guidance makes clear it is necessary for the Secretary to analyze all evidence.  If she has not done so and has not sufficiently explained the weight given to all probative exhibits,

18

"to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979).  In *Cotter*, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter*, 642 F.2d at 706-07.  However, the ALJ need not undertake an exhaustive discussion of all the evidence.  *See*, *e.g.*, *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  "There is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record."  *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004).  "[W]here [a reviewing court] can determine that there is substantial evidence supporting the Commissioner's decision, . . . the *Cotter* doctrine is not implicated."  *Hernandez v. Comm'f of Soc. Sec.*, 89 Fed. Appx. 771, 774 (3d Cir. 2004) (not precedential).

A reviewing court may not set aside the Commissioner's final decision if it is supported by substantial evidence, even if the court would have reached different factual conclusions.  *Hartranft*,

181 F.3d at 360 (*citing Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986); 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."). "However, even if the Secretary's factual findings are supported by substantial evidence, [a court] may review whether the Secretary, in making his findings, applied the correct legal standards to the facts presented." *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983) (internal quotation omitted). Where the ALJ's decision is explained in sufficient detail to allow meaningful judicial review and the decision is supported by substantial evidence, a claimed error may be deemed harmless. *See, e.g., Albury v. Comm'r of Soc. Sec.*, 116 F. App'x 328, 330 (3d Cir. 2004) (not precedential) (citing *Burnett v. Commissioner*, 220 F.3d 112 (3d Cir. 2000) ("[O]ur primary concern has always been the ability to conduct meaningful judicial review."). An ALJ's decision can only be reviewed by a court based on the evidence that was before the ALJ at the time he or she made his or her decision. *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001).

## IV. Discussion

Plaintiff asserts that the Acting Commissioner's decision should be remanded for the following reasons: 1) the ALJ erred in affording more weight to the non-examining state agency physician than to the consultative examiner and state agency medical

20

consultant specializing in neurology (Doc. 7 at 8); and 2) the ALJ
did not properly account for Plaintiff's limitations in
concentration, persistence, and pace (*id.* at 19).

**A.   *Consideration of Medical Opinion Evidence***

With his first claimed error, Plaintiff asserts that the
opinions of Dr. Desai, a consulting examiner, and Dr. Shane, a
state agency medical consultant specializing in neurology, should
have been given more weight than the opinion of Dr. Balogh, a state
agency non-examining physician.  (Doc. 7 at 8.)  Defendant
maintains the ALJ properly determined Plaintiff's RFC.  (Doc. 8 at
14.)  I conclude this claimed error is cause for remand.

It is well established under the regulations and caselaw that
the relationship between the claimant and opining physician is an
important consideration in the determination of the weight afforded
the opinion with more weight generally afforded to the opinion of a
source who has examined the claimant than to one who has not.  *See*,
*e.g.*, *Podedworny v. Harris*, 745 F.2d 210, 217 (3d Cir. 1984); 20
C.F.R. § 404.1527(c)(1).  Whether the physician is a specialist is
also a relevant consideration in that more weight is generally
given to the opinion of a specialist about medical issues related
to his or her area of specialty than to the opinion of a source who
is not a specialist.  20 C.F.R. § 404.1527(c)(5).

The reason ALJ Myers assigned limited weight to Dr. Desai's
opinion is that he concluded Dr. Desai

> seemingly greatly and overly relied upon the
> claimant's subjective complaints where, as
> here, the evidence of record does not
> indicate that the claimant's allegations
> regarding his symptoms and limitations are
> entirely credible.  Thus, Dr. Desai
> overestimated the overall degree of the
> claimant's limitations.  Furthermore, Dr.
> Desai's opinion is inconsistent with his
> narrative report regarding the claimant's
> ability with respect to lifting and carrying
> and thus renders that aspect of his opinion
> unpersuasive.  Additionally, Dr. Desai's
> report regarding the claimant's sitting,
> standing, and walking limitations are not
> consistent with the claimant's objective
> clinical examination findings on a
> longitudinal basis.

(R. 22-23.)

     As Plaintiff notes, both Dr. Desai and Dr. Shane had more

restrictive exertional and non-exertional limitations than Dr.

Balogh's opinion and the ALJ's assessment.  (Doc. 7 at 8-9.)

Plaintiff points to their opinions that Plaintiff would not be

capable of standing/walking six hours in an eight-hour workday

which means he would be limited to a range of light work which

should be treated as sedentary work pursuant to SSR 83-10.  (*Id.* at

9.)

     In addition to the general consideration set out in §

404.1527(c)(1), Plaintiff claims error because the ALJ's bases for

affording little weight to Dr. Desai's opinion are not supported by

substantial evidence.  (Doc. 7 at 10.)  Plaintiff asserts that,

contrary to ALJ Myers' assessment, Dr. Desai reviewed the medical

and treatment history and based his opinion on the totality of the

examination, specifically stating that his standing/walking limitation was "'*based upon today's examination*.'"  (Doc. 7 at 11 (quoting R. 259).)

Plaintiff next points to the ALJ's failure to cite to any findings which conflicted with Dr. Desai's opinion, asserting that neither "Plaintiff nor the District Court can properly review the basis of the ALJ's decision when the ALJ does not identify which evidence puportedly conflicted with Dr. Desai's opinion."  (*Id.* (citing R. 23).)  He identifies the July 2013 MRI findings as "overwhelming evidence" supporting a limitation on standing and walking.  (*Id.* (citing R. 326, 327).)  Plaintiff notes that although this MRI was not available to Dr. Desai or Dr. Balogh, the fact that Dr. Balogh did not have the lumbar spine MRI to review is further evidence that the ALJ's reliance on Dr. Balogh's opinion over that of an examining physician was error.  (*Id.* at 12.)

Plaintiff is correct that ALJ Myers did not acknowledge that Dr. Desai based his standing/walking limitation on his own examination of Plaintiff and the ALJ did not specifically identify contradictory medical evidence.  The ALJ's statement regarding the inconsistencies between the limitations found by Dr. Desai and the longitudinal record inherently points to a conflict between Dr. Desai's physical examination findings and other clinical examination findings.  Such a conflict requires an ALJ to do more than acknowledge it--he must identify conflicting records with

specificity and provide reasons for crediting certain objective clinical findings over others. *See*, *e.g.*, *Gross v. Comm'r of Soc. Sec.*, No. 15-2764, ---Fed. App'x----, 2016 WL 3553259, at *5 (3d Cir. June 30, 2016). ALJ Myers did not do this and, given the record evidence before the ALJ, the Court must conclude the ALJ did not properly assess Dr. Desai's opinion.[3]

Plaintiff's reference to the July 2013 MRI evidence is significant not only as objective evidence substantiating lumbar problems and potential limitations (Doc. 7 at 11), but also because the MRI arguably indicates a deteriorating condition--a relevant factor in the weight accorded an opinion which predates such evidence. *See*, *e.g.*, *Grimes v. Colvin*, Civ. A. No. 15-113E, 2016 WL 246963, at *2 (W.D. Pa. Jan. 21, 2016). *Grimes* noted that the date of a non-examining state agency opinion (up to a few years old), in and of itself, is not an issue. *Id.* (citing *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011)). However,

---

[3] Although the record review set out in the Background section of this Memorandum shows there is scant evidence regarding Plaintiff's walking/standing difficulties around the time of Dr. Desai's examination on October 20, 2012, or earlier, the force of Plaintiff's argument is enhanced by the fact that he was seen at the Fredericksburg Community Health Center the following month for complaints of leg pain and the physician's assistant who examined him noted that Plaintiff walked with a mild limp and had tenderness to palpation at the sciatic notch. (R. 320.) Thus, relatively contemporaneous evidence could be considered corroborative of Dr. Desai's assessment and call into question ALJ Myers conclusion that Dr. Desai's walking/standing limitations were not consistent with objective clinical examinations on a longitudinal basis (R. 23).

where evidence can be read to indicate that a plaintiff's condition deteriorated after the state agency reviewer issued his opinion, *Grimes* considered the ALJ's reliance on that opinion "troubling." *Id.*

> "Other courts have been disinclined to uphold a denial of benefits when the ALJ relied upon an outdated report of a non-treating physician, and there was evidence on the record that the claimant's condition deteriorated after the report was prepared." *Link v. Soc. Sec. Disability*, No. 13-812, 2014 WL 3778320, at *11 (W.D. Pa. July 30, 2014), citing *Griffes v. Astrue*, 855 F. Supp. 2d 257 (D. Del. 2012) (recognizing that non-treating sources should be 'evaluated to the degree to which these opinions consider all of the pertinent evidence in [the] claim.') and *Foley v. Barnhart*, 432 F. Supp. 2d 465 (M.D. Pa. 2005); *Nolan v. Astrue*, No. 10-1639, 2011 WL 3651152, at *19 (W.D. Pa. Aug. 18, 2011), citing *Cadillac v. Barnhart*, 84 Fed. Appx. 163, 168-69 (3d Cir. 2003).

*Grimes*, 2016 WL 246963, at *2.

Because the record contains evidence of physical examinations and objective diagnostic testing (R. 320, 322, 326-27, 328-29) which are arguably indicative of problems that may affect walking/standing abilities, the ALJ's reliance on a non-examining physician's opinion that predated this evidence is troublesome. As in *Grimes*, this issue warrants remand, particularly when considered in the context of the ALJ's failure to address the opinion of Dr. Shane (a state agency medical consultant with a neurology specialty) in his March 2013 RFC assessment that Plaintiff could "walk/stand 2 to 3 hours in eight hour day" (R. 289) and checked

the box that Plaintiff could stand and/or walk for a total of "at least 2 hours in an 8-hour workday," rejecting the next check-the-box option that Plaintiff could stand and/or walk for a total of "about 6 hours in an 8-hour workday" (R. 288).

As suggested by Plaintiff, ALJ Myers apparently rejected Dr. Shane's opinion in this regard because his RFC included the finding that Plaintiff was capable of standing and walking up to six hours (a finding consistent with Dr. Balogh's opinion that Plaintiff could stand and/or walk for about six hours in an eight-hour day (R. 66)).  (Doc. 7 at 13-14 (citing R. 22).)  This implicit rejection is problematic for reasons similar to those discussed in the context of Dr. Desai's opinion.  Additionally, where a reviewing neurology specialist agrees with an examining physician, the ALJ's reliance on the opinion of a reviewing consultant who did not have all relevant records requires thorough explanation.

While there may be a valid basis for the ALJ's opinion assessments, he has not provided such an explanation here.  The Third Circuit Court of Appeals recently reiterated that the court should not "'supply a reasoned basis for the agency's action that the agency itself has not given.'"  *Gross*, 2016 WL 3553259, at *4 (quoting *Christ the King Manor, Inc. v. Sec'y of Health & Human Services*, 730 F.3d 291, 305 (3d Cir. 2013)).  Therefore, although the record is thin and the Court does not assess matters left to the Commissioner, this case must be remanded for further

consideration of the opinion evidence and the establishment of a

properly supported RFC assessment.[4]

This conclusion does not undermine Defendant's assertion that

the ALJ, not a physician, is to determine the claimant's RFC based

on all of the evidence of record. (Doc. 8 at 14 (citing 20 C.F.R.

§ 404.1546(c)).) Defendant devotes five pages of her brief to this

point of law (*id.* at 14-19), but does not directly address

Plaintiff's specific claimed errors regarding consideration of the

2012 opinion of Dr. Desai and the 2013 opinion of Dr. Shane. (*See*

Doc. 8 at 19-20.) Rather, Defendant points to Dr. Fayyazi's

earlier opinions that, following cervical fusion surgery, Plaintiff

was able to work without sitting, standing, or walking limitations

by June 2011. (*Id.* at 19 (citing R. 294-95).) Defendant's

reliance on Dr. Fayyazi's findings does not alter the Court's

conclusion that remand is warranted for reconsideration of the

medical opinion evidence and further proceedings as warranted for

several reasons: the proffered evidence is non-responsive to

---

[4] The Court recognizes the reviewing court may consider ALJ
error harmless where the ALJ's decision is explained in sufficient
detail to allow meaningful judicial review and the decision is
supported by substantial evidence. *See*, *e.g.*, *Albury*, 116 F. App'x
at 330. However, the Court does not pursue this consideration here
primarily because Defendant did not do so. As discussed in the
text, Defendant essentially argues that the ALJ properly assessed
the medical opinions and generally avers the Court can conduct a
meaningful review. (Doc. 8 at 14-20.) Furthermore, harmless error
is not clearly evident here given the considerations discussed in
the discussion of ALJ Myers assessments of the medical opinions at
issue.

Plaintiff's specific opinion evidence arguments; the ALJ did not rely on Dr. Fayyazi's findings cited by Defendant in undermining other opinion evidence, and Defendant may not provide a *post hoc* rationalization for the ALJ's conclusion, *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001); and the potentially relevant change in condition discussed above calls Dr. Fayyazi's earlier conclusions into question.

**B.    *Concentration, Persistence, and Pace Limitations***

Plaintiff asserts that the ALJ failed to properly account for Plaintiff's moderate limitations in concentration, persistence, and pace both in his RFC and in his VE hypothetical.  (Doc. 7 at 19.) Defendant argues that the ALJ appropriately accounted for Plaintiff's mental limitations by limiting Plaintiff to occupations involving only simple work-related decisions and only occasional changes in the routine work setting.  (Doc. 8 at 20 (citing R. 18-19; *Ramirez v. Barnhart*, 372 F.3d 546 (3d Cir. 2004); *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015)).)  I conclude that because remand is warranted for the reasons discussed above, this issue should be reviewed as well.

Courts have recognized the ability to perform simple tasks as distinct from the ability to stay on task and only the latter would account for limitations in concentration, persistence, or pace. *See, e.g., Mascio*, 780 F.3d at 638.  The Third Circuit Court of Appeals has held that to accurately portray a claimant's

impairments, the ALJ must include all "credibly established limitations" in the hypothetical.  *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) (citing *Plummer v. Apfel*, 186 F.3d 422, 431 (3d Cir. 1999)).

As an initial matter, here Plaintiff's limitations regarding concentration, persistence, or pace are recognized by the ALJ and well established by other acceptable sources.  (R. 19, 65, 270-71.) Therefore, pursuant to *Rutherford*, these limitations had to be included in the hypothetical.

Defendant's argument that the ALJ properly accounted for concentration, persistence, or pace limitations by limiting Plaintiff to occupations involving only simple work-related decisions and only occasional changes in the routine work setting (Doc. 8 at 20) is not persuasive.  Although the VE identified several exemplary occupations that could be performed by the hypothetical individual who was limited to jobs involving only simple work-related decisions and only occasional changes in the routine work setting (R. 48), the subsequent discussion of Plaintiff's cognitive limitations at the ALJ hearing can be described as muddled at best and, in the course of the rambling inquiry, the VE at times indicated that the jobs he had identified would not be available.  (*See* R. 50-56.)  Therefore, this appears to be a case where the RFC limitations which were also presented to the VE are arguably distinct from concentration, persistence, or

pace limitations.  Therefore, this issue should be considered on remand.

## V. Conclusion

For the reasons discussed above, Plaintiff's appeal is properly granted and this matter is remanded to the Acting Commissioner for further consideration.  An appropriate Order is filed simultaneously with this action.


<u>Richard P. Conaboy</u>
RICHARD P. CONABOY
United States District Judge

DATED: August 25, 2016